Daniel Cooper (SBN 153576)
daniel@sycamore.law
Hannah Mathieson (SBN 358967)
hannah@sycamore.law
SYCAMORE LAW, INC.
1004 O'Reilly Avenue
San Francisco, CA 94129
Tel: (415) 360-2962

Attorneys for Plaintiff
Los Angeles Waterkeeper

Attorneys cont.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a public benefit non-profit corporation,<br><br>                    Plaintiff,<br><br>        vs.<br><br>THE BOEING COMPANY, a California Corporation,<br><br>                    Defendant. | Case No.:<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES<br><br>Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387 |

Erina Kwon (SBN 235079)
erina@lawaterkeeper.org
Benjamin Harris (SBN 313193)
ben@lawaterkeeper.org
360 East 2nd Street, Suite 250
Los Angeles, CA 90012
Tel: (310) 394-6162

Erica Maharg (SBN 279396)
eam@atalawgroup.com
8 Rio Vista Ave.
Oakland, CA 94611
Tel: (510) 473-8793

COMPLAINT                                                                 2

# I.    JURISDICTION AND VENUE

1.    This is a civil action brought under the citizen suit provisions of the Federal Water Pollution Control Act ("Clean Water Act" or "Act"), 33 U.S.C. § 1251 *et seq*.

2.    This Court has subject matter jurisdiction over Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") and The Boeing Company ("Boeing" or "Defendant") (collectively the "Parties") and over the subject matter of this action pursuant to section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States).

3.    This complaint ("Complaint") seeks relief for ongoing violations of the Clean Water Act, and the terms and conditions of the *Waste Discharge Requirements for the Boeing Company, Santa Susana Field Laboratory, Order Number R4-2023-0359, NPDES Number CA0001309, CI Number 6027* ( "2023 Permit") and the *Waste Discharge Requirements for the Boeing Company, Santa Susana Field Laboratory, Order No. R4-2015-0033, NPDES No. CA0001309* ("2015 Permit"), related to polluted storm water and non-storm water discharges from the facility owned and operated by Boeing at 5800 Woolsey Canyon Road, Canoga Park, CA 91304 ("Facility").

4.    The relief requested is authorized pursuant to 28 U.S.C. §§ 2201–2202 (power to issue declaratory relief in case of actual controversy and further necessary relief based on such a declaration) and 33 U.S.C. §§ 1319(b), 1365(a) (injunctive relief and civil penalties).

5.    Prospective citizen plaintiffs must, as a jurisdictional prerequisite to enforcing the Clean Water Act in Federal District court, prepare a Notice of Violation and Intent to File Suit letter ("Notice Letter") containing, *inter alia*, sufficient information to allow the recipient to identify the standard, limitation, or order alleged to be violated, the activity alleged to constitute the violations, the location of alleged violations, and the date or dates of such violations. 33 U.S.C. § 1365(a); 40 C.F.R. § 135.3(a).

6.    The Notice Letter must be sent via certified mail at least sixty (60) days prior to filing a complaint ("Notice Period") to the owner and/or operator of the facility alleged to be in violation of the Act and, where the alleged violator is a corporation, to the corporation's registered agent for service of process. 33 U.S.C. § 1365(b); 40 C.F.R. § 135.2(a)(1).

7.    A copy of the Notice Letter must be mailed to the Attorney General, U.S. Department of Justice ("U.S. DOJ"), the Administrator of the U.S. Environmental Protection Agency ("U.S. EPA"), the Regional Administrator of the U.S. EPA for the region in which a violation is alleged to have occurred, and

the chief administrative officer for the water pollution control agency for the State in which the violation is alleged to have occurred. 33 U.S.C. § 1365(b); 40 C.F.R. § 135.2(b)(1)(A).

8.    On October 24, 2025, LA Waterkeeper sent a Notice Letter via certified mail to Boeing and its registered agent for service of process. The Notice Letter described ongoing violations of the Act and 2015 and 2023 Permits at the Facility and provided notice of LA Waterkeeper's intention to file suit against Boeing at the expiration of the Notice Period. A true and accurate copy of the Notice Letter as provided to Boeing is attached to the Complaint (Attachment C).

9.    The Notice Letter was received by John Demers on November 3, 2025 (Certified Mailing Receipt No. 9589071052700363458439). According to the Statement of Information filed by Boeing with California's Secretary of State on October 25, 2024, John Demers is Boeing's Secretary.

10.    The Notice Letter was received by David Calhoun on October 29, 2025 (Certified Mailing Receipt No. 9589071052700363458910). According to the Statement of Information filed by Boeing with California's Secretary of State on October 25, 2024, David Calhoun is Boeing's Chief Executive Officer.

11.    The Notice Letter was received by CSC-Lawyers Incorporating Service on October 27, 2025 (Certified Mailing Receipt No.

9589071052700363458934). According to the Statement of Information filed by Boeing with California's Secretary of State on October 24, 2024, CSC-Lawyers Incorporating Service is Boeing's Agent for Service of Process.

12.    The Notice Letter was received by U.S. Department of Justice (DOJ) on October 31, 2025 (Certified Mailing Receipt No. 9589071052700363458446).

13.    The Notice Letter was received by U.S. Environmental Protection Agency (EPA) on October 29, 2025 (Certified Mailing Receipt No. 9589071052700363458941).

14.    The Notice Letter was received by the Regional Administrator for U.S. EPA Region IX on October 27, 2025 (Certified Mailing Receipt No. 9589071052700363458477).

15.    The Notice Letter was received by the Executive Director of the State Water Resources Control Board ("State Board") on October 27, 2025 (Certified Mailing Receipt No. 9589071052700363458453).

16.    The Notice Letter was received by the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board") on October 27, 2025 (Certified Mailing Receipt No. 9589071052700363458460).

17.    More than sixty (60) days passed between the date on which the Notice Letter was received by Boeing, and the State and Federal agencies, and

the date on which the initial complaint in this action was filed (December 29, 2025).

18.    On December 1, 2025, the California Regional Water Quality Control Board, Los Angeles Region ("RWCCB") issued Administrative Civil Liability Complaint ("ACL") R4-2025-0268, accessing $595,026 in civil penalties for violations of the 2023 Permit.

19.    Boeing has paid the ACL penalty.

20.    The RWQCB has scheduled a hearing on the 2025 ACL for February 26, 2025.

21.    The RWQCB has previously issued ACLs in 2002 (R4-2002-0084) and 2007 (R4-2007-0035) totaling $510,190 in civil penalties.

22.    The RWQCB has not sought injunctive relief for any of Boeing's violations

23.    Neither the U.S. EPA nor the State of California is diligently prosecuting a court action to redress violations alleged in the Notice Letter, or this complaint.

24.    LA Waterkeeper's claim for civil penalties is not barred by the prior ACLs under section 309(g) of the Act. 33 U.S.C. § 1319(g).

25.    LA Waterkeeper's claim for injunctive relief is not barred by the prior ACLs under section 309(g) of the Act. 33 U.S.C. § 1319(g).

26.    Venue is proper in the Central District of California pursuant to section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

LA Waterkeeper, by and through its counsel, hereby alleges:

## II.    INTRODUCTION

27.    This Complaint seeks relief for ongoing unlawful discharges of pollutants, polluted storm water, and polluted non-storm water from the Facility to waters of the United States in violation of the Act and 2015 and 2023 Permits.

28.    Specifically, this Complaint alleges that: Boeing has and will continue to discharge storm water from the Facility in violation of the 2015 and 2023 Permits' discharge and non-discharge requirements since October 30, 2020 (5 years and 60 days prior to filing). 33 U.S.C. § 1311(a).

29.    With every significant rainfall event, millions of gallons of polluted storm water originating from the Facility contaminate the Los Angeles area's local streams, creeks, rivers, estuaries, harbors, bays, beaches, and coastal waters.

30.    Los Angeles County's and Ventura County's waterways—including the Los Angeles River, Bell Creek, Chatsworth Creek, Dayton Canyon Creek, Arroyo Simi nearshore coastal waters, and connected beaches ("Receiving Waters")—are ecologically sensitive areas, and are essential habitat for dozens of

amphibian, mammal, reptile, cetacean, pinniped, fish, bird, macro-invertebrate and invertebrate species.

31.    The Regional Board identifies beneficial uses of the Receiving Waters and establishes water quality standards in the Basin Plan for the Coastal Watersheds of Los Angeles and Ventura Counties ("Basin Plan").  *See* Table 1.

32.    Facilities, like Boeing's, that discharge storm water and non-storm water contaminated with sediment, toxic metals, and other pollutants to the Receiving Waters contribute to the impairment of surface waters and harm aquatic ecosystems.

33.    Boeing's polluted discharges threaten public health and the economic welfare of our community—particularly individuals and businesses that depend on our creeks, beaches, and ocean waters—including LA Waterkeeper's members.

34.    The Facility's contaminated discharges can and must be controlled as required by the Clean Water Act for ecosystem recovery and to protect public health.

35.    Controlling polluted storm water and non-storm water discharges is vital to protecting the Receiving Waters, and essential to LA Waterkeeper's mission.

36.    Boeing is liable under the Clean Water Act for its past and ongoing failures to comply with the Act, including 99 violations for discharges in violation

of the 2015 and 2023 Permits' effluent limitations, and at least 1,887 days of violations for failing to comply with the 2015 and 2023 Permits' discharge prohibitions, technology-based and water quality-based effluent limitations, planning and monitoring requirements, and other procedural and substantive requirements. See 33 U.S.C. §§ 1342, 1365.

37.     Prior to January 1, 2024, the Facility was regulated by the 2015 Permit.

38.     The reissued, updated, and more stringent version of the Permit was issued on October 19, 2023, and became effective on January 1, 2024.

39.     Boeing is liable for daily, date-specific, monthly, and annual violations of the 2015 and 2023 Permits since at least October 30, 2020. *See* 33 U.S.C. §§ 1311(a), 1319(d); 40 C.F.R. § 19.4.

## III.    THE PARTIES

### A.    Los Angeles Waterkeeper

40.     LA Waterkeeper is a non-profit public benefit corporation founded in 1993 and organized under the laws of California.

41.     LA Waterkeeper is dedicated to the preservation and defense of the rivers, creeks, and coastal waters of Los Angeles County. The organization works to achieve these goals through education, outreach, organizing, litigation, and advocacy.

42.    When necessary to achieve its objectives, LA Waterkeeper initiates citizen enforcement actions under the Act on behalf of itself and its members who live, work, and recreate in and around Los Angeles County.

43.    LA Waterkeeper has members who use and enjoy Bell Creek, Arroyo Simi, Dayton Canyon Creek, Chatsworth Creek, and the Los Angeles River ("the Receiving Waters") and nearby streams, rivers, and beaches.

44.    LA Waterkeeper's members use these and connected waterways, beaches, and ocean waters to research, educate, fish, surf, swim, sail, SCUBA dive, kayak, bird watch, and recreate. Unlawful discharges of pollutants from the Facility impair the ability of LA Waterkeeper's members to use and enjoy these waters.

45.    LA Waterkeeper's members live in close proximity to the Facility and drink from wells that pose an ongoing risk of contamination from infiltrating polluted water.

46.    The unpermitted and unlawful discharge of pollutants from the Facility into the Receiving Waters, and failure to comply with the 2015 and 2023 Permits' mandates, degrade the quality of the Receiving Waters and pose risks to human health and aquatic life, harming LA Waterkeeper's members and impairing their ability to use and enjoy these waters for recreational, aesthetic, spiritual, and other activities.

47.    The interests of LA Waterkeeper and its members, therefore, have been, are being, and will continue to be adversely affected by Boeing's failure to comply with the Act and 2015 and 2023 Permits.

48.    Continuing commission of the acts and omissions alleged herein will irreparably harm LA Waterkeeper and its members, for which harm they have no plain, speedy, or adequate remedy at law.

49.    The relief sought herein will redress the harms to LA Waterkeeper caused by Boeing's unlawful activities.

**B.    Operator of the Facility**

50.    Boeing incorporated as a company in California on January 23, 1959. The first available Statement of Information filed with California's Secretary of State is dated October 25, 2024.

51.    The company's most recent publicly-available Statement of Information was filed November 7, 2025 and lists the company's principal address as 926 Long Bridge Dr., Arlington, VA 22202.

52.    Boeing is also a Delaware corporation.

53.    According to the company's website, Boeing operates in aerospace, defense, engineering and program management, technology and development-program execution, advanced design and manufacturing systems, safety, finance, quality and productivity improvement, and information technology.

54.    The Facility occupies around 2,850 acres in the Simi Hills of Ventura, CA and is jointly owned by Boeing and the federal government.

55.    Approximately 1,500 acres of the Facility is developed.

56.    Boeing and its owner-predecessor conducted, among other operations, research, development, and testing of rocket engines and chemical lasers.

57.    Boeing is a "person" pursuant to the Act. *See* 33 U.S.C. § 1362(5).

58.    Boeing is the legally responsible operator of the Facility for purposes of compliance with the Clean Water Act and the 2015 and 2023 Permits.

## IV.    STATEMENT OF FACTS

### A. Santa Susana Field Laboratory

59.    From the 1950s to the 1970s, "volatile organic compounds were used to clean hardware, rocket engine thrust chambers, and other equipment." 2023 Permit, at F-4. Rocket engine testing began at the Facility in the 1950. Each rocket engine test conducted at the Facility generated "fuel-related pollutants and heavy metals." *Id.*

60.    The Facility housed ten nuclear research reactors, including the Sodium Reactor Experiment ("SRE").

61.    In 1959, thirteen of the forty-three fuel rods used in the SRE overheated and failed.

62.    Staff continued to operate the SRE for nearly two weeks after the meltdown occurred.

63.    To avoid an explosion, workers at SSFL vented the cores, releasing radioactive gasses into the atmosphere for weeks.

64.    Best estimates conclude that close to 15% of the cesium within the reactor was released—459 times the amount of radiation as during the 1979 reactor meltdown at Three Mile Island.

65.    For decades, radioactively and chemically contaminated waste, including fuel, explosives, toxic gas, kerosene rocket fuel, igniters, process chemicals, reactive metals, organic solvents, and heavy toxic metals, was burned in pits, contaminating the soil, groundwater, and air.

66.    Rocket engine testing operations ended in late 2006, though two test stand complexes remain onsite. 2023 Permit, at F-4.

67.    Portions of the Facility, now owned and operated by Boeing, were formerly controlled by the Department of Energy ("DOE"). DOE researched and developed seismic testing experiments and nuclear programs. The last nuclear reactor was shuttered in 1980 and all nuclear research concluded by 1989. 2023 Permit, at F-4.

68.    The research and associated activities resulted in residual soil and groundwater contamination.

COMPLAINT                                                                                      14

1    69.    The Facility has the potential, based on a 24-hour duration, 10-year

2    storm event, to discharge approximately 187 million gallons per day of

3    stormwater runoff containing pollutants from the Facility. 2023 Permit, at F-6.

4    70.    Approximately 60% of the discharge exits the property via two

5    southerly discharge points to Bell Creek, a tributary to the Los Angeles River.

6    2023 Permit, at F-6.

7    71.    The stormwater runoff from Happy Valley flows via Dayton Canyon

8    Creek to Chatsworth Creek. Chatsworth Creek flows south to, and is tributary to,

9    Bell Creek which then flows southeast to the Los Angeles River. 2023 Permit, at

10   F-6.

11   72.    Silvernale Pond receives runoff from the Facility and several

12   discharge points, which is in turn treated and discharged to Bell Creek.

13   73.    The Los Angeles River, from its origins at the confluence of Arroyo

14   Calabasas and Bell Creek to the Pacific Ocean, is a water of the United States and

15   is categorized as a Traditional Navigable Water by the U.S. Environmental

16   Protection Agency. *See Special Case Evaluation Regarding Status of the Los*

17   *Angeles River, California as a Traditional Navigable Water*, U.S. EPA, Region

18   IX (July 6, 2010).

19   74.    Surface water discharges that flow north of the Facility are directed

20   into Arroyo Simi, the main watercourse through Simi Valley.

COMPLAINT                                                                          15

75. During storm events, storm water comingled with on-site pollutants is discharged to the Receiving Waters from both covered and uncovered areas at the Facility at no fewer than twelve (12) discharge points.

**B. Receiving Waters**

76. "Beneficial uses form the cornerstone of water quality protection under the Basin Plan." Basin Plan, at 2-3.

77. "Once beneficial uses are designated, appropriate water quality objectives can be established and programs that maintain or enhance water quality can be implemented to ensure the protection of beneficial uses." *Id.*

78. Existing, intermittent, and potential beneficial uses of the Receiving Waters include:

   a. Municipal and Domestic Supply ("MUN")—"[u]ses of water for community, military, or individual water supply systems including, but not limited to, drinking water supply";

   b. Industrial Process Supply ("PROC") —"Uses of industrial activities that depend primarily on water quality";

   c. Ground Water Recharge ("GWR")—"[u]ses of water for natural or artificial recharge of ground water for purposes of future extraction, maintenance of water quality, or halting of saltwater intrusion into freshwater aquifers";

d. Freshwater Replenishment ("FRSH")—"[u]ses of water for natural or artificial maintenance of surface water quantity or quality";

e. Water Contact Recreation ("REC-1")—"[u]ses of water for recreational activities involving body contact with water, where ingestion of water is reasonably possible. These uses include, but are not limited to, swimming, wading, water-skiing, skin and scuba diving, surfing, white water activities, fishing, or use of natural hot springs";

f. Non-Contact Water Recreation ("REC-2")—"[u]ses of water for recreational activities involving proximity to water, but not normally involving body contact with water, where ingestion of water is reasonably possible. These uses include, but are not limited to, picnicking, sunbathing, hiking, beachcombing, camping, boating, tidepool and marine life study, hunting, sightseeing, or aesthetic enjoyment in conjunction with the above activities";

g. Warm Freshwater Habitat ("WARM")—"[u]ses of water that support warm water ecosystems including, but not limited to, preservation or enhancement of aquatic habitats, vegetation, fish, or wildlife, including invertebrates";

h. Wildlife Habitat ("WILD")—"[u]ses of water that support terrestrial ecosystems including but not limited to, preservation and enhancement of terrestrial habitats, vegetation, wildlife... or wildlife water and food sources"; and

i. Rare, Threatened, or Endangered Species ("RARE")—"[u]ses of water that support habitats necessary, at least in part, for the survival and successful maintenance of plant or animal species established under state or federal laws as rare, threatened, or endangered." Basin Plan, pp. 2-4-2-8.

79. Table 1 reflects the designated beneficial uses for the Receiving Waters.

TABLE 1
Basin Plan Beneficial Uses of Receiving Waters

| Discharge Point(s) | Receiving Water Name | Beneficial Use(s) |
|---|---|---|
| 001, 002, 008, 011, 018 | Los Angeles River above Balboa Blvd. | Existing: Ground Water Recharge (GWR), Water Contact Recreation (REC-1), Non-contact Water Recreation (REC-2), Warm Freshwater Habitat (WARM), Wildlife Habitat (WILD)<br>Potential: Municipal and Domestic Supply (MUN) |
| 001, 002, 011, 018 | Bell Creek | Existing: Wildlife Habitat (WILD)<br>Intermittent: Ground Water Recharge (GWR), Water Contact Recreation (REC-1), Non-contact Water Recreation (REC-2), Warm Freshwater Habitat (WARM) |

| | | |
|---|---|---|
| | | Potential: Municipal and Domestic Supply (MUN) |
| 008 | Dayton Canyon Creek | Existing: Wildlife Habitat (WILD) Intermittent: Ground Water Recharge (GWR), Water Contact Recreation (REC-1), Non-contact Water Recreation (REC-2), Warm Freshwater Habitat (WARM) Potential: Municipal and Domestic Supply (MUN) |
| 003, 004, 005, 006, 007, 009, 010 | Arroyo Simi | Existing: Wildlife Habitat (WILD), Rate, Threatened or Endangered Species Habitat (RARE) Intermittent: Industrial Process Supply (PROC), Ground Water Recharge (GWR), Freshwater Replenishment (FRSH), Water Contact Recreation (REC-1), Non-contact Water Recreation (REC-2), Warm Freshwater Habitat (WARM) Potential: Municipal and Domestic Supply (MUN) |

80.    A waterbody that is "impaired" exceeds WQSs and does not support the designated beneficial uses for that water body.

81.    The Regional Board lists a waterbody as impaired under CWA section 303(d) based on available sampling data and agency resources.

<u>Bell Creek</u>

82.    Bell Creek, at its confluence with Arroyo Calabasas, forms the headwaters of the Los Angeles River. It begins in the western San Fernando Valley, fed from watershed from the Facility and the surrounding Simi Hills as a

COMPLAINT                                                                    19

natural river flowing southeast through the Simi Hills until it is channelized near Escorpión Peak.

83.     Bell Creek flows through highly urbanized areas, including Canoga Park and the West Hills before ultimately forming the Los Angeles River.

84.     Bell Creek is impaired for bacteria. *See* 2023 Permit, F-21.

85.     Under both the 2015 Permit and 2023 Permits, Boeing is required to conduct receiving water sampling at one location in Bell Creek (RSW-001). 2023 Permit, E-6; 2015 Permit, E-20.

86.     The 2023 Permit requires monitoring of Bell Creek to take place at discharge points 001, 002, 011, and 018. *See* 2023 Permit, Table E-1.

87.     The 2024 California Integrated Report identifies Bell Creek as impaired for bacteria. *Id.* at F-21.

88.     Effluent limits for cadmium, copper, lead, and zinc in the 2023 Permit are consistent with Waste Load Allocations ("WLAs") established by the Los Angeles River Metals TMDL.

89.     The 2023 Permit "implements the applicable numeric water quality objectives for bacteria included in the Los Angeles River Bacteria TMDL" for discharges to Bell Creek. *Id.* at F-34.

90.     The 2015 Permit required monitoring of Bell Creek to additionally take place at discharge point 008. 2015 Permit, E-7.

COMPLAINT                                                                                      20

91.     Effluent limits for cadmium, copper, lead, zinc, and selenium discharges to Bell Creek in the 2015 Permit are based on WLAs established by the Los Angeles River Metals TMDL. *Id.* at F-18.

92.     Effluent Limitations of discharge points 001, 002, 011, and 018 in the 2015 Permit are reflected in Table 4a of the 2015 Permit. *Id.*

93.     Effluent Limitations of discharge point 008 set by the 2015 Permit are described in Table 4d in the 2015 Permit. *Id.* at Table 4d.

Arroyo Simi

94.     Arroyo Simi runs west for 19 miles from Simi Valley and is a tributary to the Calleguas Creek, which terminates in the Pacific Ocean in Ventura County. Arroyo Simi originates in Corriganville Park and travels through Simi Valley, Oak Park, and Moorpark before merging with Arroyo Las Posas.

95.     While historically Arroyo Simi was ephemeral, it is now channelized and flows year-round.

96.     The Arroyo Simi Greenway is a developing project between the City of Simi Valley and the Rancho Simi Recreation and Park District to develop green space and encourage recreational enjoyment of Arroyo Simi.

97.     Arroyo Simi is impaired for ammonia, boron, chloride, chlorpyrifos, sulfates, total dissolved solids, bifenthrin, cyfluthrin, cypermethrin, deltamethrin,

COMPLAINT                                                                    21

iron, permethrin, pyrethroids, chlordane, copper, dichlorodiphenyltrichloroethane (DDT), nitrate/nitrite, selenium, sedimentation/siltation, trash, and toxicity.

98.    Under both the 2015 and 2023 Permits, Boeing is required to conduct receiving water sampling at one location in Arroyo Simi (RSW-002). 2023 Permit, at E-6; 2015 Permit, at E-20.

99.    The 2023 Permit requires an additional receiving water monitoring point in Arroyo Simi, upstream of RSW-002 (RSW-003). 2023 Permit, E-24-25.

100.    The 2015 and 2023 Permits require monitoring of Arroyo Simi to take place at discharge points 003, 004, 005, 006, 007, 009, and 010.

101.    The 2023 Permit implements applicable water quality objectives detailed in "Part 3 of the Water Quality Control Plan for Inland Surface Waters, Enclosed Bays and Estuaries of California" for bacteria discharges to Arroyo Simi. *See* 2023 Permit, F-19.

102.    Arroyo Simi is in the Calleguas Creek Watershed and is impaired for the following constituents: ammonia, boron, chloride, chlorpyrifos, diazinon, indicator bacteria, organophosphate pesticides, sedimentation, siltation, total dissolved solids, toxicity, and trash. *Id.*, at F-22.

103.    The WLAs applicable to Arroyo Simi set by the Calleguas OC Pesticides and Polychlorinated Biphenyl (PCBs) TMDL and Calleguas Creek

Watershed Metals TMDL (mercury and copper only) are also incorporated by the 2023 Permit to discharges to Arroyo Simi.

104.   However, because the groundwater below Arroyo Simi has a municipal and domestic supply beneficial use, the 2023 Permit effluent limitation for nickel is more stringent than the WLA set by the Calleguas Creek Watershed Metals TMDL.

105.   The 2015 Permit, per the TMDL for Organochlorine Pesticides and PCBs and Siltation in Calleguas Creek, its Tributaries and Magu Lagoon, set receiving water limitations of pesticides and PCBs in Arroyo Simi. *See* 2015 Permit, 18-19; *see also* Table F-9.

106.   Arroyo Simi was listed as impaired on California's 2010 Integrated Report for the following constituents: ammonia, chlorpyrifos, diazinon, indicator bacteria, pesticides, sediment/siltation, boron, chloride, fecal coliform, sulfates, total dissolved solids, toxicity, and trash. *Id.*, at F-17.

107.   The 2015 Permit implemented effluent limitations are consistent with WLAs for mercury, copper, and nickel established by the Calleguas Creek Watershed Metals TMDL.

108.    The effluent limit for nickel set by the 2015 Permit is more stringent than the WLA set by the Calleguas Creek Watershed Metals TMDL due to Arroyo Simi's municipal and domestic supply and groundwater recharge beneficial uses.

Dayton Canyon Creek

109.    Dayton Canyon Creek is a tributary to Bell Creek.

110.    Stormwater runoff from discharge point 008 flows through Dayton Canyon Creek to Chatsworth Creek. Chatsworth Creek is tributary to Bell Creek and the Los Angeles River.

111.    The 2023 Permit requires monitoring of Dayton Canyon Creek at discharge point 008.

112.    Per the 2023 Permit, "[t]he Bacteria TMDL adopted for the Los Angeles River and its tributaries addresses the bacteria impairment in . . . Dayton Canyon Creek and applies to discharges from . . . discharge point[] 008." 2023 Permit, F-21.

113.    Effluent limits in the 2023 Permit for cadmium, copper, lead, and zinc for discharges to Dayton Canyon Creek are based on WLAs established by the Los Angeles River Metals TMDL. *Id.* at F-22.

114.    The 2015 Permit adopted effluent limits for cadmium, copper, lead, zinc, and selenium for discharges to Dayton Canyon Creek based on WLAs established by the Los Angeles River Metals TMDL. 2015 Permit, at F-18.

Los Angeles River

115.   The Los Angeles River is one of the most prominent rivers of Los Angeles County, flowing 51 miles from Canoga Park through downtown Los Angeles and Long Beach until flowing into San Pedro Bay and the Pacific Ocean.

116.   The entire Los Angeles River flows through some of the most highly urbanized areas of California. According to CalEnviroScreen 4.0, an environmental justice mapping tool promulgated by the California Office of Environmental Health Hazard Assessment, communities along the Los Angeles River channel are among the most pollution-burdened communities in the Los Angeles region.

117.   Many of the outfalls at the Facility discharge to the Los Angeles River either via Bell Creek or Dayton Canyon Creek.

118.   The Los Angeles River Reach 6 is impaired for copper, bacteria, selenium, chlordane, chloride, sulfates, total dissolved solids, zinc, and toxicity.

119.   The 2015 and 2023 Permits incorporate effluent limitations based on WLAs established by the Los Angeles River Nitrogen Compounds and Related Effects (Nutrients) TMDL and the Los Angeles River Metals TMDL. 2023 Permit, F-22; 2015 Permit, F-17.

120.   The 2015 and 2023 Permits further, consistent with the Los Angeles River Watershed Bacteria TMDL, require compliance with the TMDL's geometric

mean and single sample targets for bacteria in the Receiving Waters. 2023 NPDES Permit, at F-22; 2015 NPDES Permit, at F-17-18.

121. The Los Angeles River, Bell Creek, Dayton Canyon Creek, and Arroyo Simi have Beneficial Uses designated under the Basin Plan and reflected in TABLE 1. *See also,* 2023 Permit, Tables F-6, F-7.

**C.    Boeing's 2015 Permit**

122. The Waste Discharge Requirements for the Boeing Company, Santa Susana Field Laboratory, Order No. R4-2015-0033, NPDES No. CA0001309, became effective on April 1, 2015.

123. The 2015 NPDES Permit authorized Boeing to discharge stormwater runoff via twelve (12) discharge points.

124. Discharge Points 001 and 002 discharge approximately 60% of the Facility's discharge to Bell Creek at the south of the Facility.

125. Discharge Point 008 contains runoff from Happy Valley and flows via Dayton Creek to Chatsworth Creek to Bell Creek and ultimately to the Los Angeles River.

126. Discharge Points 003, 004, 005, 006, 007 and 010 discharge stormwater from the northern border of the Facility and is either pumped to Silvernale Pond at the Facility or discharged to the Arroyo Simi.

127. Discharge Point 009 discharges to Arroyo Simi.

128. Discharge Points 011 and 018, as they lie upstream of Discharge Points 001 and 002, contribute to the discharge at Discharge Points 001 and 002.

129. Discharges of non-stormwater, PCBs, any substance in concentrations toxic to human, animal, plant, or aquatic life, and discharges of waste at locations other than those specifically authorized by the 2015 NPDES Permit were prohibited. 2015 Permit, §§ III.A-H.

130. The 2015 Permit set effluent limits for individual parameters and discharge points. *See id.* at Tables 4a, 4b, 4c, 4d.

131. The 2015 Permit required Boeing to monitor stormwater discharges in accordance with a timing, frequency, constituent, and sample-type schedule. *Id.* at Tables E-2a, E-2b, E-2c.

132. The 2015 Permit also set out daily maximum receiving water limitations for chlorpyrifos, diazinon, chlordane, 4,4-DDD, 4,4,-DDE, 4,4,-DDT, dieldrin, PCBs, and toxaphene at outfalls 003-007, 009, and 010. *Id.* § V.B; *id.* at Table E-3a.

133. The 2015 Permit set receiving water monitoring requirements for RSW-001 and RSW-002. *Id.*

134. Sampling results were reported to the California Integrated Water Quality System ("CIWQS") data repository on a set schedule. *See id.* at Table E-4.

135.    If an analytical sample was greater than the average monthly limit, Boeing was required to collect four additional samples at roughly equal intervals during the month until compliance with the average monthly limit was demonstrated. *Id.* § E.I.O.

136.    In the event of noncompliance with the proscribed monthly average effluent limitation, sampling frequency of a given constituent increased to weekly and continued on a weekly basis until compliance with the average monthly effluent limit was achieved. *Id.*

137.    The 2015 Permit also set limits for Boeing's discharges into the Receiving Waters for parameters such as pH, *E. coli*, ammonia, and PCBs. *See id.* § V.A.

138.    For each of these parameters, the 2015 Permi established an annual, monthly, daily, or instant maximum limit. *Id.*

139.    Under the 2015 Permit, exceedances of a water quality based effluent limit or performance based limit "triggers an evaluation of the BMPs implemented at the site." *Id.* § VII.L.

140.    If the evaluation determined that BMPs were insufficient to prevent exceedances, Boeing was required to implement upgrades and report to the Regional Board within 60 days of the exceedance. *Id.*

COMPLAINT                                                                      28

141.   The 2015 Permit also required compliance with all applicable effluent limitations, national performance standards, and all federal regulations established pursuant to sections 301, 302, 303(d), 304, 306, 307, 316, 318, 405, and 423 of the Act. *Id.* § IV.A.2.e.

142.   In the event of Boeing's noncompliance with any "prohibition, maximum daily effluent limitation, monthly average effluent limitation, instantaneous minimum, instantaneous maximum, or receiving water limitations of the 2015 Permit, Boeing [was] required to notify the Regional Board within 24 hours of having knowledge of such noncompliance." *Id.* § IV.A.2.t.

143.   Boeing was also required to comply with Monitoring and Reporting Permit ("MRP") requirements as detailed in Attachment E to the 2015 Permit.

144.   Monitoring locations for all discharge points, influent locations, and receiving water stations are described in 2015 Permit Table E-6.

145.   Monitoring parameters, sample type, acceptable test method, and frequency are detailed in 2015 Permit Tables E-2a, E-2b, E-2c, E-2d, and E-3a.

146.   The 2015 Permit required that monitoring results of parameters required to be sampled with each discharge event, monthly, and quarterly, be submitted to the Regional Board in compliance with Self-Monitoring Report requirements on a quarterly basis. *See id.* at Table E-4.

147.   A discharge event is defined as "a discharge event [] greater than 0.1 inch of rainfall in a 24-hour period. No more than one sample per week need be obtained during extended periods of rainfall and a storm event must be preceded by at least 72 hours of dry weather." *Id.* at E-13.

148.   Every qualifying storm event for which testing of a specific constituent is required but not conducted is a violation of the 2015 Permit.

149.   Parameters that require yearly sampling must be submitted with the quarterly self-monitoring report due on February 15. *Id.* at Table E-4.

150.   The 2015 Permit also required Boeing to submit a Storm Water Pollution Prevention Plan ("SWPPP") in accordance with the requirements outlined in Attachment G, a Best Management Practices Plan, and a Spill Contingency Plan. *See id.* § VI.C.3.

**C.    Boeing's 2023 Permit**

151.   The 2023 Permit authorizes Boeing to discharge stormwater runoff via twelve (12) discharge points. *See infra.,* ¶¶ 117-21.

152.   Discharges of non-stormwater, PCBs, any substances in concentrations toxic to human, animal, plant, or aquatic life, and discharges of waste at locations other than those specifically authorized by the 2023 Permit are prohibited. *See* 2023 Permit § 3.

153.   The 2023 Permit further sets effluent limits for individual parameters and discharge points. *Id.* §§ 4.1, 4.2, 4.3.

154.   The 2023 Permit obligates Boeing to monitor stormwater discharges in accordance with a timing, frequency, constituent, and sample-type schedule.

155.   Sampling results are reported to CIWQS on a quarterly and annual schedule. *See id.* at Table E-8.

156.   If an analytical sample is greater than the average monthly limit, Boeing must collect four additional samples at roughly equal intervals during the month until compliance with the average monthly limit is demonstrated. *Id.* § E.1.14.

157.   In the event of noncompliance with the proscribed monthly average effluent limitation, sampling frequency of a given constituent increases to weekly and continues on a weekly basis until compliance with the average monthly effluent limit is achieved. *Id.*

158.   The 2023 Permit also sets limits for Boeing's discharges into the Receiving Waters for parameters such as but not limited to pH, pesticides, PCBs, and ammonia.

159.   For each of these parameters, the 2023 Permit establishes an annual, monthly, daily, and/or instantaneous maximum limit.

COMPLAINT                                                                      31

160.    Receiving water limitations for *E. coli* are also applicable to Bell Creek and Arroyo Simi. *Id.* § 5.1.3.

161.    Separate sediment limitations for organochlorine pesticides and PCBs, and surface water limits for chlorpyrifos and diazinon are also applicable to Arroyo Simi. *Id.* § 5.2.

162.    The 2023 Permit also requires compliance with all applicable effluent limitations, national performance standards, and all federal regulations established pursuant to sections 301, 302, 303(d), 304, 306, 307, 316, 318, 405, and 423 of the Act. *Id.* § 6.1.2.b.

163.    In the event of Boeing's noncompliance with any effluent or receiving water limitation of the 2023 Permit, Boeing is required to notify the Regional Board within 24 hours of having knowledge of such noncompliance. *Id.* § 6.1.2.m.

164.    Boeing is also required to comply with Monitoring and Reporting Permit ("MRP") requirements as detailed in Attachment E to the 2023 Permit.

165.    Monitoring locations for all discharge points, influent locations, and receiving water stations are described in 2023 Permit Table E-1.

166.    Monitoring parameters, sample type, location, acceptable test method, and frequency are detailed in 2023 Permit Tables E-2, E-3, E-4, and E-6.

167.    The 2023 Permit requires monitoring results of parameters required to be sampled with each discharge event, monthly, and quarterly, must be submitted

to the Regional Board in compliance with Self-Monitoring Report requirements on a quarterly basis. *See id.* at Table E-8.

168.   A discharge event is defined by the 2023 Permit as "any discharge from a discharge point that occurs after a qualifying storm event. A qualifying storm even is when precipitation occurs of 0.1 inch or rainfall or greater in a 24-hour period preceded by at least 72 hours of dry weather." *Id.* at E-13.

169.   Every qualifying storm event for which testing of a specific constituent is required but not conducted is a violation of the 2023 Permit.

170.   Parameters that require yearly sampling must be submitted with the quarterly SMR due on February 15. *Id.*

171.   Boeing is also required to develop and implement a SWPPP, Best Management Practices Plan, and Spill Contingency Plan. *Id.* § 6.3.3.

172.   These programs are to be reviewed concurrently every year, and updates must be submitted to the Regional Board within 30 days of their revision.

## IV.    LEGAL BACKGROUND

### A.    The Clean Water Act and NPDES Permitting

173.   The Act is the primary federal statute regulating the protection of the nation's water. The Act aims to prevent, reduce, and eliminate pollution in the nation's water in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

174.  Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with other enumerated sections of the Act, including prohibition of discharges not authorized by, or in violation of, the terms of a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to section 402. *Id*. §§ 1311, 1342(b).

175.  The Receiving Waters are waters of the United States.

176.  The Act requires all point source discharges of pollutants to waters of the United States be accomplished in compliance with an NPDES permit. 33 U.S.C. § 1311(a); 40 C.F.R. § 122.26(c)(1); *see also Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1151 (9th Cir. 2000) (finding that the "Clean Water Act allows citizen suits based on violations of any conditions of an NPDES permit, even those which are purely procedural."); *Wishtoyo Found. v. Magic Mountain, LLC*, No. CV 12-05600 GAF, 2014 WL 6841554, at *5 (C.D. Cal. Dec. 3, 2014) ("[T]o establish a violation of the Act, Plaintiffs need only prove that Defendants violated the terms and conditions of their NPDES permit.").

177.  The Facility is a "point source" of pollution as defined in section 502(14) of the Clean Water Act, 33 U.S.C. § 1362(14), and section 122.2 of Title 40 of the Code of Federal Regulations.

178.  Section 402(p) of the Act allows each state to administer an NPDES permit program for regulating the discharge of pollutants, including discharges of polluted storm water, approved by the U.S. EPA. 33 U.S.C. § 1342(p).

179.  Section 505(a)(1) of the Act provides for citizen enforcement against any "person" who is alleged to be in violation of an "effluent standard or limitation . . . or an order issued by the Administrator or a State with respect to such a standard or limitation." 33 U.S.C. §§ 1365(a)(1), (f).

180.  "Effluent standard or limitation" is defined in the Act to include: (a) the section 301(a) prohibition against unpermitted discharges; and/or (b) a condition of an NPDES permit such as the 2015 Permit and the 2023 Permit. *Id.* § 1365(f); *see also id.* §§ 1311(a), 1314(b), 1342.

181.  The Act is a strict liability statute. *NRDC v. Los Angeles County,* 725 F.3d 1194, 1204–1205 (9th Cir. 2013); *Baykeeper v. Int'l Metals Ekco, Ltd*., 619 F. Supp. 2d 936, 940 (C.D. Cal. 2009) (*citing Hawaii's Thousand Friends v. City & Cty. of Honolulu,* 821 F. Supp. 1368, 1392 (D. Haw. 1993)).

182.  A "person" under the Act includes individuals, corporations, partnerships, associations, States, municipalities, commissions, and political subdivisions of a State, or any interstate body. 33 U.S.C. § 1362(5).

183.  Each violation of any term or condition in an NPDES permit is an independent violation of the Act and applicable permit. 33 U.S.C. § 1319(d).

184.  Each separate violation of the Act subjects the violator to a penalty of up to $66,712.00 per day per violation for violations occurring after November 2, 2015, where penalties are assessed on or after December 27, 2023. *Id.* §§ 1319(d), 1365(a); 40 C.F.R. § 19.4 (Adjustment of Civil Monetary Penalties for Inflation).

185.  An action for injunctive relief is authorized under section 505(a) of the Act. 33 U.S.C. § 1365(a).

186.  Section 505(d) of the Act allows a prevailing or substantially prevailing party to recover litigation costs, including fees for attorneys, experts, and consultants where the court finds that such an award is appropriate. 33 U.S.C. § 1365(d); *see also St. John's Organic Farm v. Gem County Mosquito Abatement Dist.,* 574 F.3d 1054, 1062–64 (9th Cir. 2009) (holding that the court's discretion to deny a fee award to a prevailing plaintiff is narrow, and denial is "extremely rare").

## V. VIOLATIONS OF THE 2015 AND 2023 PERMITS AND THE ACT

187.  As of October 27, 2025, the date on which Boeing received LA Waterkeeper's Notice Letter, the Facility continues to discharge in excess of effluent limitations established by the 2023 Permit.

188.  LA Waterkeeper's investigation establishes that the Facility continues to violate the 2015 and 2023 Permits' discharge and non-discharge provisions.

*//*

COMPLAINT                                                                                                    36

1    Ongoing Self-Reported Violations of the Permits' Effluent Limitations

2    189.    Storm water sampling data submitted by Boeing to the State Board

3    confirm that the Facility's storm water discharges contain pollutant concentrations

4    significantly exceeding 2015 and 2023 NPDES Permit limits in the 2020, 2021,

5    2022, 2023, 2024, and 2025 reporting years. *See* Attachment A.

6    190.    In the first quarter of 2025 alone, Boeing self-reported 17 violations

7    of the Permit, including exceedances of radium, manganese, lead, *E. coli*,

8    tetrachlorobibenzo-p-dioxin (TCDD), and mercury. *See* Attachment A.

9    191.    The discharge of polluted storm water from the Facility as

10    summarized in Attachment A establishes that Boeing was discharging pollutants in

11    violation of 2023 Permit limitations during the 2024-2025 wet season.

12    192.    The discharge of heavily polluted storm water from the Facility as

13    summarized in Attachment A establishes that Boeing was discharging pollutants

14    violation of 2023 Permit limitations during the 2023-2024 wet season.

15    193.    The discharge of heavily polluted storm water from the Facility as

16    summarized in Attachment A establishes that Boeing was discharging pollutants

17    violation of 2015 Permit limitations during the 2022-2023 wet season.

18    194.    The discharge of heavily polluted storm water from the Facility as

19    summarized in Attachment A establishes that Boeing was discharging pollutants

20    violation of 2015 Permit limitations during the 2021-2022 wet season.

195.    The discharge of heavily polluted storm water from the Facility as summarized in Attachment A establishes that Boeing was discharging pollutants violation of 2015 Permit limitations during the 2020-2021 wet season.

196.    Storm water sampling data also establish that at least 32 discharges from the Facility contained concentrations of pollutants in violation of numeric surface water limitations. *See* Attachment A; 2023 NPDES Permit, § F.4.3.2; 2015 NPDES Permit, Table F-9.

Ongoing Violations of the 2015 and 2023 Permits' Discharge Prohibitions and Effluent Limitations

197.    Stormwater data from samples collected by LA Waterkeeper members in the 2024-25 wet season corroborate the pattern established in monitoring data submitted by Boeing to the State Board—ongoing exceedances of Boeing's 2015 and 2023 Permits. *See* Attachment B.

198.    On February 13, 2025, LA Waterkeeper members collected storm water being discharged from the boundary of the Facility and into Bell Creek pursuant to a Standard Operating Procedure and Quality Assurance Program Plan for Industrial Stormwater Sampling ("SOP-QAPP").

199.    The February 13, 2025 storm water samples were analyzed by a certified laboratory, the analytical results of which are summarized at Table 2.

//

COMPLAINT                                                                                    38

1

2

T<small>ABLE</small> 2
Effluent Limit Exceedances in Storm Water Sampling Data Collected by Los
Angeles Waterkeeper

3

| Date | Pollutant | Result | Permit Limit | Testing Location |
|---|---|---|---|---|
| 2.17.2025 | Aluminum | 8.88 mg/L | 1.0 mg/L | Long: 34.214059 Lat: -118.693405 |
| | Iron | 9.98 mg/L | 0.3 mg/L | |
| | Zinc | 50 ug/L | 5.2 ug/L | |
| | Aroclor 1260 (PCB) | 0.3 ug/L | 0 ug/L | |

4

5

6

7

8

200.   The concentration of aluminum in the February 17, 2025, sample exceeded 2023 NPDES Permit limit. *Id.*

9

10

201.   The concentration of iron in the February 17, 2025, sample exceeded 2023 NPDES Permit limit. *Id.*

11

12

202.   The concentration of zinc in the February 17, 2025, sample exceeded 2023 NPDES Permit limit. *Id.*

13

14

203.   The concentration of Aroclor 1260 in the February 17, 2025, sample exceeded 2023 NPDES Permit limit. *Id.*

15

16

204.   Samples were gathered by LA Waterkeeper members at a discharge point from the Facility, unauthorized by the 2023 and 2015 Permits, in violation of the 2023 and 2015 Permits. *See* 2023 Permit, § 3.2; 2015 Permit, § III.G.

17

18

//

19

//

20

COMPLAINT

205.   Each day Boeing operates the Facility in non-compliance with effluent limitations in the 2015 and 2023 NPDES Permits is a separate and distinct violation of section 301(a) of the Act. 33 U.S.C. § 1311(a).

206.   On information and belief, Boeing has and will continue to discharge storm water in high concentrations of various metals (e.g., aluminum, lead, mercury) known to harm aquatic species and bioaccumulate in the environment—including exceeding relevant numeric standards by over 131x on some occasions.

207.   Boeing is liable for ongoing violations at the Facility of the Act for each day of significant rainfall from at least October 30, 2020 to the present.

208.   Boeing has previously and will continue to discharge materials, toxic wastes, deleterious substances, PCBs, and wastes other than those authorized by the 2023 and 2015 NPDES Permits.

209.   Boeing has previously and will continue to discharge waste at locations not specified by the 2023 and 2015 Permits.

210.   Each day Boeing operates the Facility in non-compliance with discharge prohibitions in the 2015 and 2023 NPDES Permits is a separate and distinct violation of section 301(a) of the CWA. 33 U.S.C. § 1311(a).

211.   Boeing is liable for daily violations of the 2023 and 2015 NPDES Permits since at least October 30, 2020, and is subject to civil penalties for each individual violation. 33 U.S.C. §§ 1311, 1342.

<u>Ongoing Violations of the 2015 and 2023 Permits' SWPPP Mandates</u>

212.   Publicly available SWPPPs and site maps produced by/for Boeing—from 2019 and 2024—fail to comply with requirements of the 2015 and 2023 NPDES Permits.

213.   Boeing's violations of discharge limitations evidence Boeing's ongoing failure to consistently implement adequate BMPs. Boeing's failure to do so confirms that the Facility's pollution prevention program does not comply with the 2023 and 2015 NPDES Permits' pollution prevention standards.

214.   Every day Boeing operates the Facility with an inadequately developed, implemented, and/or properly revised SWPPP is a separate and distinct violation of the Act.

215.   Boeing has been and remains in daily violation of the 2015 and 2023 Permits' SWPPP requirements since at least October 30, 2020.

## VI.   CLAIMS FOR RELIEF

**<u>FIRST CAUSE OF ACTION</u>**
**Discharge of Polluted Storm Water in Violation of the 2023 and 2015 Permits'**
**Discharge Prohibitions and the Act**
**(33 U.S.C. §§ 1311(a), 1342, 1365(a), 1365(f))**

216.   LA Waterkeeper re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

COMPLAINT                                                                                    41

217.   Storm water discharged by Boeing from the Facility contain a "pollutant" and/or "pollutants" as defined at section 502(6) of the Act and 40 C.F.R. § 122.2

218.   Boeing's discharge of storm water constitutes "discharges of a pollutant" as defined in Section 502(12) of the Act and 40 C.F.R. § 122.2.

219.   Each day of precipitation above 0.10″ causes discharge from the Facility.

220.   Each day that Boeing discharges pollutants from the Facility at locations not authorized by the 2015 and 2023 Permits or is in non-compliance with discharge prohibitions detailed in the 2015 and 2023 Permits is a separate and distinct violation of Section 301(a) of the Act.

221.   Each day Boeing operates the Facility in noncompliance with discharge prohibitions in the 2015 and 2023 Permits between October 30, 2020 and December 29, 2025 is a separate and distinct violation of Section 301(a) of the Act.

222.   Commission of the acts and omissions above alleged caused irreparably harm LA Waterkeeper's members and the citizens of the State of California, for which they have no plain, speedy, or adequate remedy at law.

WHEREFORE, LA Waterkeeper prays judgment against Boeing as set forth hereafter.

COMPLAINT                                                                                           42

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

## SECOND CAUSE OF ACTION

**Discharge of Polluted Storm Water in Violation of the 2023 and 2015 Permits' Effluent Limitations and the Act**
**(U.S.C. §§ 1311(a), 1342, 1365(a), 1365(f))**

223.   LA Waterkeeper re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

224.   Based on LA Waterkeeper's investigation, Boeing has discharged, and continues to discharge pollutants to waters of the United States in violation of the Effluent Limitations established by the 2015 and 2023 Permits.

225.   LA Waterkeeper's sampling and analysis of storm water discharging from the Facility demonstrates discharges of storm water from the Facility contain concentrations of pollutants that exceed limits established by the 2023 Permit. *See* Attachment B.

226.   Boeing violates and will continue to violate the 2015 and 2023 Permits' pollution control standard each and every time polluted storm water containing concentrations of pollutants exceeding the Permit Effluent Limits are discharged from the Facility.

227.   Each and every violation of each of the 2015 and 2023 Permits' Effluent Limitations is a separate and distinct violation of section 301(a) of the Act. 33 U.S.C. § 1311(a).

228.    Boeing's violations of the 2015 and 2023 Permits' effluent limitations and the Act are ongoing and continuous.

229.    Boeing is subject to an assessment of civil penalties for each and every violation and day of violation of the Act occurring from October 30, 2020, to the present, pursuant to sections 309(d) and 505 of the Act. 33 U.S.C. §§ 1319(d), 1365; 40 C.F.R. § 19.4.

230.    An action for injunctive relief is authorized by section 505(a) of the Act. 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm LA Waterkeeper and the residents of the State of California, for which there is no plain, speedy, or adequate remedy at law.

231.    An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

WHEREFORE, LA Waterkeeper prays for judgment against Boeing set forth hereafter.

### THIRD CAUSE OF ACTION
**Discharge of Polluted Storm Water in Violation of the 2015 and 2023 Permits' Receiving Water Effluent Limitations and the Act**
**(U.S.C. §§ 1311(a), 1342, 1365(a), 1365(f))**

232.    LA Waterkeeper re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

233.   Based on LA Waterkeeper's investigation, Boeing has failed, and continues to fail, to reduce or prevent pollutants from being discharged to waters of the United States at the Facility that achieve the 2015 and 2023 Permit receiving water limitation standards.

234.   LA Waterkeeper's sampling and analysis of storm water discharging from the Facility (summarized in TABLE 2) demonstrates discharges of storm water from the Facility contain concentrations of pollutants that exceed the receiving water Effluent Limitations established by the 2015 and 2023 Permits.

235.   Boeing's failures to develop and/or implement effective pollution controls, including minimum BMPs and such advanced as necessary to achieve the pollutant discharge reductions at the Facility are violations of the Act. *See* 33 U.S.C. § 1311(b).

236.   Boeing violates and will continue to violate the 2015 and 2023 Permits' requirements each and every time polluted storm water containing concentrations of pollutants exceeding each of the receiving water Effluent Limitations are discharged from the Facility.

237.   Each and every violation of each of the 2015 and 2023 Permit's receiving water Effluent Limitations is a separate and distinct violation of section 301(a) of the Act. 33 U.S.C. § 1311(a).

238.    Boeing's violations of the 2015 and 2023 Permits' receiving water limitations and the Act are ongoing and continuous.

239.    Boeing is subject to an assessment of civil penalties for each and every violation and day of violation of the 2015 and 2023 Permit and Act occurring from October 30, 2020, to the present, pursuant to sections 309(d) and 505 of the Act. 33 U.S.C. §§ 1319(d), 1365; 40 C.F.R. § 19.4.

240.    An action for injunctive relief is authorized by section 505(a) of the Act. 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm LA Waterkeeper and the residents of the State of California, for which there is no plain, speedy, or adequate remedy at law.

241.    An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

WHEREFORE, LA Waterkeeper prays for judgment against Boeing set forth hereafter.

## FOURTH CAUSE OF ACTION
### Failure to Prepare, Implement, Review, and Update
### An Adequate Storm Water Pollution Prevention Plan
### (U.S.C. §§ 1311(a), 1342, 1365(a), 1365(f) and General Permit Provisions)

242.    LA Waterkeeper re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

COMPLAINT                                                                          46

243.   Boeing has not developed and implemented a legally adequate Storm Water Pollution Prevention Plan for the Facility.

244.   Boeing's violations of the 2015 and 2023 Permits' Storm Water Pollution Prevention Plan requirements are ongoing and continuous.

245.   Each day since October 30, 2020, that Boeing has not developed, implemented, and reviewed and updated a legally adequate Storm Water Pollution Prevention Plan for the Facility is a separate and distinct violation of the 2015 and 2023 Permits and the Act. 33 U.S.C. § 1311(a).

246.   Boeing has been in violation of the 2015 and 2023 Permits' Storm Water Pollution Prevention Plan requirements every day since October 30, 2020. Violations continue each day that an adequate Storm Water Pollution Prevention Plan for the Facility is not developed and fully implemented.

247.   Boeing's failures to develop and/or implement effective pollution controls, including minimum BMPs and such advanced as necessary to achieve the pollutant discharge reductions at the Facility are violations of the Act. *See* 33 U.S.C. § 1311(b).

248.   Boeing is subject to an assessment of civil penalties for each and every violation of the Act occurring from October 30, 2020 to the present, pursuant to sections 309(d) and 505 of the Act. 33 U.S.C. §§ 1319(d), 1365; 40 C.F.R. § 19.4.

249.    An action for injunctive relief is authorized by section 505(a) of the Act. 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm LA Waterkeeper and the residents of the State of California, for which there is no plain, speedy, or adequate remedy at law.

250.    An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

WHEREFORE, LA Waterkeeper prays for judgment against Boeing as set forth hereafter.

## **RELIEF REQUESTED**

WHEREFORE, LA Waterkeeper respectfully requests that this Court grant the following relief:

a.  Declare Boeing to have violated, and to be in violation of, the 2023 Permit, the 2015 Permit, and the Act as alleged herein for its unpermitted and ongoing unlawful discharges of pollutants;

b.  A court order declaring Boeing to have violated and to be in violation of Section 301(a) of the Act for discharging pollutants in violation of a permit issued pursuant to Section 402 of the Act;

c.  A court order requiring that Boeing comply with all applicable terms and conditions of the 2023 Permit and Section 301(a) of the Act;

1    d. Enjoin Boeing from discharging polluted storm water from the

2       Facility except as authorized by the 2023 Permit;

3    e. Order Boeing to immediately implement storm water pollution control

4       technologies and measures that prevent pollutants in the Facility's

5       storm water discharges from contributing to violations of any water

6       quality standards and/or applicable effluent limitations or

7       requirements in the 2023 Permit;

8    f. Order Boeing to prepare a Storm Water Pollution Prevention Plan

9       consistent with the 2023 Permit's requirements, and implement

10      procedures to regularly review and update the Storm Water Pollution

11      Prevention Plan to ensure ongoing compliance with Storm Water

12      Pollution Prevention Plan requirements in the 2023 Permit;

13   g. Order Boeing to pay civil penalties of up to $64,618.00 for each

14      violation and day of violation alleged herein pursuant to sections

15      309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a); 40

16      C.F.R. §§ 19.1.4;

17   h. Order Boeing to take appropriate actions to restore the quality of

18      waters impaired or adversely affected by its activities;

19

20

COMPLAINT                                                                   49

i. Award LA Waterkeeper's costs (including reasonable investigative, attorney, witness, compliance oversight, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and,

j. Award any such other and further relief deemed appropriate by the Court.

DATED: December 29, 2025

Respectfully Submitted,

By:  */s/ Daniel Cooper*
Daniel Cooper
SYCAMORE LAW, INC.
Attorney for Plaintiff Los
Angeles Waterkeeper

COMPLAINT                                                                                          50